UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

TRAVIS C., [1]                                              Case No. 6:22-cv-01523-MK

                     Plaintiff,                       **OPINION AND
ORDER**

      v.

COMMISSIONER, Social Security
Administration,

                  Defendant.

_____

**KASUBHAI,** United States Magistrate Judge:

      Plaintiff Travis C. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act (the "Act"). The Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties consented to allow a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party in this case.

Magistrate Judge to enter final order and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 6. For the reasons explained below, the Commissioner's decision is reversed and remanded for immediate payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB and a Title XVI application for supplemental security income (SSI) in August 2017.[2] Tr. 18; 90–91. Plaintiff alleges disability as of January 1, 2016. Tr. 90–91. This case came before the ALJ on remand from the United States District Court for the District of Oregon. Tr. 820. Pursuant to the remand, Plaintiff appeared for a second telephone hearing in front of the ALJ on July 12, 2022. Tr. 711. On August 3, 2022, the ALJ again denied Plaintiff's claim for disability insurance benefits. Tr. 723. The Appeals Council then denied Plaintiff's request for review. Plaintiff timely appealed.

## FACTUAL BACKGROUND

Born on February 9, 1990, Plaintiff was 25 years old on his alleged onset date. Tr. 65. Plaintiff graduated high school and attended culinary school but left without finishing in 2014. Tr. 68–69. Plaintiff has past relevant work as a hand packager, truck operator, and forklift driver. Tr. 85. Plaintiff alleges disability due to his anxiety disorder. Tr. 90–91.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner. ECF No. 11.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert,*

482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations their impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through June 30, 2020, and had not engaged in substantial gainful activity since the alleged onset date of January 1, 2016. Tr. 713. At step two, the ALJ found that Plaintiff had the following severe impairments: "depressive disorder, recurring without psychotic features; generalized anxiety disorder; and somatic symptom disorder." Tr. 713. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of a listed impairment. Tr. 714. The ALJ then assessed Plaintiff's RFC and found Plaintiff capable of performing a full range of work at all exertional levels with the following limitations: "able to understand, remember, and carry out simple and routine instructions; use judgment to make simple work-related decisions; and occasionally interact with the public, coworkers, and supervisors." Tr. 717.

At step four, the ALJ found Plaintiff was able to perform his past relevant work as a hand packager. Tr. 721. In addition to past relevant work, the ALJ found that a significant number of other jobs existed in the national economy which Plaintiff could perform despite his limitations, including office cleaner, floor cleaner, and car lot attendant. Tr. 722. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 723.

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) failing to identify legally sufficient bases supported by substantial evidence in rejecting Dr. Alvord's medical opinion evidence; (2) making legal errors in the handling of the Agency's reviewing Psychologist; and (3) failing to identify legally sufficient bases supported by substantial evidence in rejecting competent lay witness statements. Plaintiff asks the Court to remand for immediate payment of benefits, or in the alternative, for further proceedings. For the following reasons, the Court finds that the ALJ erred in rejecting Dr. Alvord's medical opinion and the lay witness testimony and remands for immediate payment of benefits.

## I.    Medical Opinion Evidence

Plaintiff challenges the ALJ's assessment of the medical opinion from Dr. Alvord. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence*

("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017); *see also Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence.").

Under the new regulations, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the provider's relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

In crafting disability determination decisions, the Ninth Circuit has instructed ALJs "to use these two terms of art—'consistent' and 'supported'—with precision." *Woods v. Kijakazi*, 32

F.4th 785,793 n.4 (9th Cir. 2022). Thus, even under the new regulations "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.

Although *Woods* made clear that the hierarchy among physicians' opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence. This Court therefore concludes that the reasoning from cases unrelated to the treating physician rule remains good law. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion when the record as a whole reflects longstanding disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162– 64 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be

forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

### A.        Dr. Alvord's Opinion

The medical opinion at issue here is that of Scott Alvord, Psy.D. Dr. Alvord evaluated Plaintiff on February 14, 2019, and produced a report on February 17, 2019. Tr. 683. Within the report, Dr. Alvord checked boxes indicating Plaintiff is moderately capable of understanding, remembering, and carrying out simple and complex instructions; making simple work-related decisions; and understanding, remembering, and carrying out complex instructions. Tr. 688. Dr. Alvord further stated Plaintiff has marked limitations in interacting appropriately with the public and with supervisors, as well as moderate limitations in interacting appropriately with coworkers and responding appropriately to usual work situations. Tr. 688. Dr. Alvord described the Plaintiff as anxious, "endors[ing] transient suicidal ideation but den[ying] attempts," "motivated to isolate," and "preoccupied and paranoid." Tr. 684–85. Further, Dr. Alvord documented an "obvious resting tremor" during the evaluation. Tr. 684–85. After the evaluation, Dr. Alvord opined Plaintiff suffers from Panic Disorder with Agoraphobia, Depressive Disorder, and Somatic Symptom Disorder. Tr. 686. As a result of the diagnostic impressions, Dr. Alvord stated that Plaintiff would be off task 10% of the time during a 7.5-hour workday, and Plaintiff's

limitations would preclude him from maintaining a normal work schedule three to four days each month. Tr. 690.

The ALJ found that Dr. Alvord's findings that Plaintiff showed normal memory functions and intact thought processes during their evaluation did not support Dr. Alvord's conclusions of Plaintiff having "marked limitations and off-task behavior." Tr. 720 The ALJ also found that Dr. Alvord's findings were inconsistent with other medical records that reported "some mood instability but generally intact cognitive functioning." Tr. 720.

**B.    Supportability**

Addressing supportability, the ALJ concluded that Dr. Alvord's findings of "marked limitations, off-task behavior, and absences unpersuasive because th[ey] are not supported by the physician's own exam findings noting intact thought processes, adequate insight and judgement, normal memory and adequate concentration." Tr. 720. Plaintiff accuses the ALJ of "cherry picking" around Dr. Alvord's findings in determining a lack of supportability.

The Court's role is to view the medical records "in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164. In particular, the Ninth Circuit has repeatedly reiterated that ALJs should exercise caution relying on purported improvement in the mental health context:

> As we have emphasized while discussing mental health issues, it is error to reject [evidence] merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

In finding that Dr. Alvord's medical opinion was not supported by his own records, the ALJ focused on Dr. Alvord's assessment that Plaintiff had intact thought processes, adequate

insight, and normal memory function. Tr. 720. However, although Dr. Alvord indicated that on the day of the assessment Plaintiff was able to understand cognitively, Dr. Alvord also opined that Plaintiff has better days than others. Tr. 690. Dr. Alvord's report concluded that Plaintiff "is motivated to isolate," "is preoccupied and paranoid," and that Plaintiff sometimes does not leave the house for days on end. Tr. 684–85.

Moreover, Dr. Alvord found that Plaintiff had a "resting tremor that was quite noticeable." Tr. 684. Dr. Alvord reported, "[h]e visibly shook throughout the encounter. His voice quaked[,] and he admitted acute panic." Tr. 685. Dr. Alvord's assessment explained that although Plaintiff admits doing some simple chores, Plaintiff also "[o]ccasionally lacks the motivation to attend to ADLs" ("activities of daily living"), "[h]is girlfriend does most of the shopping," and "[p]rimarily anxiety impacts his desire[] to go shopping or attend appointments." Tr. 684. Dr. Alvord's opinion that Plaintiff has "some better days and worse days" supports this assertion that on some days, Plaintiff is capable of driving, shopping, or completing chores while on others, he is not. Tr. 684.

Dr. Alvord's report of Plaintiff's waxing and waning symptoms support Dr. Alvord's conclusions regarding depression, panic disorder, and Plaintiff's likely absences from work. Plaintiff's activities are sporadic and vary depending on the severity of his symptoms on a given day. Tr. 684. Dr. Alvord's conclusion that Plaintiff would likely be unable to work 10% of each day and a full three to four days each month, is supported by his finding that Plaintiff would feel better some days and worse others. Tr. 690.

Because Plaintiff's symptoms appear more or less severe at different times, the ALJ erred in focusing exclusively on Plaintiff's better moments in determining him not disabled. *See Garrison*, 759 F.3d at 1017 ("Reports of 'improvement' in the context of mental health issues

must be interpreted with an understanding of the patient's overall well-being and the nature of their symptoms."). When viewed as a whole, Dr. Alvord's records support his conclusions. *See Ghanim*, 763 F.3d at 1164 (the court found that the ALJ's description of the claimant as "upbeat" ignored the overall record which indicated that "despite some occasional signs of improvement, [claimant] continued to suffer . . ."). Thus, the ALJ's conclusion that Dr. Alvord's opinion was inconsistent with his own records is not supported by substantial evidence.

### C.     Consistency

Addressing consistency, the ALJ concluded Dr. Alvord's report is "inconsistent with the other evidence of record demonstrating some mood instability but generally intact cognitive functioning." Tr. 720. Here also, Plaintiff argues the ALJ cherry-picked and ignored the waxing and waning nature of Plaintiff's symptoms throughout the medical records. Specifically, Plaintiff argues that Dr. Alvord's findings are consistent with other medical records because—despite other providers noting Plaintiff to have generally intact cognitive function—"one can have adequate cognition and still not be able to sustain." Pl.'s Br. 10.

In finding that Dr. Alvord's medical opinion was inconsistent with other evidence of record, the ALJ relies on a medical record from March 2019, in which Plaintiff's anxiety is described as "slightly better." Tr. 1399. However, this same record indicates Plaintiff is "soft spoken looking anxious; affect is constricted;[ ]mood is anxious; speech is soft and slow." Tr. 1399. In December 2018, a staff member of Compass Behavioral Health described Plaintiff as "looking anxious" and as having "passing suicidal ideations." Tr. 669. The ALJ also relies on a record from September 2017 that notes Plaintiff's "eye contact is improved and affect is brighter." Tr. 494. However, this assessment also describes Plaintiff as "fidgety" and "his anxiety has generalized to the point of increasing agoraphobia and panic attacks in public." Tr.

496. The Plaintiff is also described as "unemployable" and "[t]he rhythmic raising and dropping of his heals [sic] are . . . reflective of a habit and attempt at anxiety relief." Tr. 427. Similar to these assessments, Dr. Alvord's own observations describe Plaintiff as having suicidal ideations and as having an anxious affect, as well as having panic disorder and agoraphobia. Tr. 685–86. These records are therefore not inconsistent with Dr. Alvord's conclusions.

The ALJ also found that Dr. Alvord's opinion was inconsistent with an October 2018 evaluation by Umpqua Health Harvard, which notes Plaintiff has adequate judgment and fair insight. Tr. 522. But that same record also notes that Plaintiff's "anxiety [is] higher and feels more depressed . . . ," and that Plaintiff has "restless legs." Tr. 521, 522, 526. Other medical records indicated that Plaintiff had "obvious tremors" and "appeared anxious and was shaking his leg, distracted and had poor focus." Tr. 1434, 673. Dr. Alvord's opinion that Plaintiff suffers from physical tremors, anxiety, and depression is not inconsistent with these records. Tr. 684–85.

Dr. Alvord concluded that Plaintiff would likely miss work three to four days a month and would be off task 10% of each workday. Tr. 690. Dr. Alvord's medical report, along with the others mentioned above, reflect Plaintiff's symptoms of anxiety and depression wax and wane over time. The records are therefore not inconsistent with Dr. Alvord's conclusion that—despite isolated findings that Plaintiff had intact thought processes, adequate insight and judgment, normal memory, and adequate concentration—Plaintiff would be unable to sustain a full-time job. To draw a conclusion supported by substantial evidence, the ALJ must view the record in its entirety. *Ghanim*, 763 F.3d at 1164. Taking a holistic view of the record discussed above, the ALJ's conclusion as to consistency was not supported by substantial evidence because the ALJ's

conclusion relies on select "cherry-picked" portions of the record and fails to recognize that Plaintiff's symptoms are such that wax and wane.

In sum, the ALJ's rationale for discounting Dr. Alvord's medical conclusions was not supported by substantial evidence.

## II.    Lay Witness Testimony

Plaintiff argues that the ALJ legally erred by not providing any germane and specific reasons for rejecting the lay witness testimony. In response, the Commissioner argues that (1) the ALJ need not provide germane reasons for discounting nonmedical lay witness testimony under the new regulations; and (2) even if the ALJ erred, the error was harmless because the testimony given by Plaintiff's mother is "substantially the same as Plaintiff's properly rejected complaints." Def.'s Br. 13.

Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (remaining citation omitted)). The reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

The ALJ must consider evidence under the new regulations, which state the ALJ is "not required to articulate how [they] considered evidence from nonmedical sources" when using the same criteria used in evaluating medical sources. 20 C.F.R. § 404.1520c(d). The Ninth Circuit has yet to decide whether this means the ALJ is still required to provide germane reasons when rejecting nonmedical testimony. However, this Court, along with many in this district, interprets the new regulations to mean that the ALJ must still provide germane reasons when rejecting lay witness testimony. *See, e.g.*, *Catherine R. v. Commissioner*, No. 1:20-cv-01503-MK, 2021 WL 5235543, at *9 (D. Or. Nov. 10, 2021) ("The ALJ errs when the ALJ fails to provide specific, germane reasons for rejecting the lay witness statement."); *see also Tracy Q. v. Kijakazi*, No. 6:22-cv-692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) ("The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony."). Because the ALJ did not provide germane and specific reasons, they erred in evaluating the lay witness testimony.

The Commissioner argues any alleged error by the ALJ was harmless because the lay witness' "statements were substantially the same as Plaintiff's properly rejected complaints." Def.'s Br. 13. In the Ninth Circuit, an ALJ's failure to address lay witness testimony is harmless when that testimony does not describe limitations beyond that provided by the Plaintiff himself. *Molina*, 674 F.3d at 1122. Here, Plaintiff's mother's testimony provides specifics that go beyond the limitations discussed in Plaintiff's own testimony. Tr. 1208–17. Therefore, the ALJ's error in not providing germane reasons for rejecting the lay witness testimony was, in fact, harmful.

In sum, the ALJ committed harmful error in failing to provide germane and specific reasons for discounting the lay witness testimony.[3]

## III.    Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the first requisite is met based on the errors discussed above. The ALJ's reasons for rejecting Dr. Alvord's medical opinion for a lack of supportability and consistency were not supported by substantial evidence.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler,*

---

[3] Because the Court has found error in the ALJ's evaluation of Dr. Alvord's medical opinion and lay witness testimony, it does not address Plaintiff's remaining argument regarding the ALJ's handling of the Agency's reviewing psychologist.

775 F.3d at 1101 (internal quotations and citations omitted). Here, the Court finds that the record has been fully developed and no material conflicts or ambiguities exist.

As to the third requisite, crediting the discredited evidence as true, the ALJ would be required to find Plaintiff disabled on remand. Dr. Alvord opined that Plaintiff's symptoms would preclude him from performing a job 10% of each workday and three to four days per month. Tr. 690. At both hearings, the first on March 21, 2019, and the second on July 12, 2022, the Vocational Expert testified that such a hypothetical employee would be unable to sustain gainful employment. Tr. 88, 769–70. Thus, on remand, the ALJ would be compelled to find Plaintiff disabled. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (remanding for an immediate payment of benefits after crediting improperly rejected evidence as true, combined with VE testimony, established disability).

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted).

Considering the record as a whole, the Court finds no reason for serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). The Court therefore exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and

payment of benefits.

IT IS SO ORDERED.

DATED this 15th day of May 2024.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge